**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

ALEXANDER M. RATTNER, individually
and on behalf of all others similarly situated,                     **CLASS ACTION**

      Plaintiff,                                                               **JURY TRIAL DEMANDED**

vs.

TRIBE APP, INC., a foreign corporation,

      Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, Alexander M. Rattner, brings this class action against Defendant, Tribe App, Inc., and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., (the "TCPA").

2.      To promote its mobile application, Defendant engages in deceptive and intrusive telemarketing. Specifically, Defendant tricks users of its mobile application into granting access to their contacts lists. Once in possession of users' contact numbers, Defendant, using an automatic telephone dialing system, and without any notice or warning to its users, transmits generic telemarketing text messages to the users' contacts from spoofed[1] telephone numbers.

---

[1] "Spoofing occurs when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity."  https://www.fcc.gov/consumers/guides/spoofing-and-caller-id.

3.     Defendant transmits its telemarketing texts without first obtaining the express consent of recipients.

4.     Defendant's violations were knowing and willful.  Defendant has received and publicly acknowledged numerous consumer complaints regarding its spam messages, but nevertheless continues to intentionally violate the TCPA to increase its revenue and profits.

5.     Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals nationwide.  Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

6.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute.  Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant.

7.     Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

8.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant

provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

### PARTIES

9.      Plaintiff is a natural person and resident of Miami-Dade County, Florida

10.     Defendant is a Delaware corporation whose principal place of business is located at 4072 20th Street, San Francisco, CA 94114.  Defendant directs, markets, and provides its business activities throughout the United States, including the State of Florida.

### THE TCPA

11.     The TCPA regulates and restricts the use of automatic telephone equipment.

12.     The TCPA protects consumers from unwanted text messages that are made with autodialers.

13.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or prerecorded message; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

14.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

15.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

16.     The Federal Communications Commission is empowered to issue rules and regulations implementing the TCPA.  In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

17.     On November 18, 2016, the FCC issued an Enforcement Advisory regarding text messages.  In its advisory, the FCC warned mobile application providers like Defendant that their applications must comply with the TCPA and that they must obtain express consent before transmitting text messages to individuals:

> This includes text messages from text messaging apps and Internet-to-phone text messaging where the technology meets the statutory definition of an autodialer. **<u>The fact that a consumer's wireless number is in the contact list of another person's wireless phone does not, by itself, demonstrate consent to receive robotexts</u>**.

FCC Enforcement Advisory No. 2016-06, November 18, 2016, *ROBOTEXT CONSUMER PROTECTION, TEXT MESSAGE SENDERS MUST COMPLY WITH THE TELEPHONE CONSUMER PROTECTION ACT*; (emphasis supplied).

18.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having

received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates."  *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

19.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

20.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"  *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

21.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

22.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future.  Id.*

23.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

24.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

25.     Moreover, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc*., 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending her the ***text message***). (emphasis added).

26.     According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

27.     As recently held by Judge Marcia G. Cooke, "[f]ar from a 'bare procedural violation,'" a violation of the TCPA "directly involves the substantive privacy rights the TCPA was enacted to protect." *Mohamed v. Off Lease Only, Inc.*, No. 15-23352-Civ-COOKE/TORRES, 2017 U.S. Dist. LEXIS 41023, at *6 (S.D. Fla. Mar. 22, 2017).

28.     Judge Cooke further observed that "temporary, unwanted occupations of an individual's time and electronic device are tangible injuries under the TCPA." *Id*. (citing *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1253 (11th Cir. 2015); *Gorss Motels, Inc. v. Safemark Sys., LP*, No. 616CV1638ORL31DCI, 2017 U.S. Dist. LEXIS 1399, 2017 WL 57313, at *1 (M.D. Fla. Jan. 5, 2017); J*WD Auto., Inc. v. DJM Advisory Grp. LLC*, No. 215CV793FTM29MRM, 2016 U.S. Dist. LEXIS 160869, 2016 WL 6835986, at *3 (M.D. Fla. Nov. 21, 2016); *A.D. v. Credit One Bank, N.A.*, No. 14 C 10106, 2016 U.S. Dist. LEXIS 110393, 2016 WL 4417077, at *7 (N.D. Ill. Aug. 19, 2016)).

29.     Through a TCPA claim, a plaintiff "seeks to remedy Defendant's alleged invasion of privacy, nuisance, and trespass on his cellular telephone. These kinds of torts have 'long been heard by American courts, and the right of privacy is recognized by most states.'" *Mohamed*, 2017 U.S. Dist. LEXIS 41023, at *6 (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)).

30.     Thus, it is well-established that a plaintiff alleging a violation of the TCPA "need not allege any additional harm beyond the one Congress has identified." *Van Patten, LLC*, 847 F.3d at 1043 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

<u>**DEFENDANT'S MOBILE APPLICATION AND TCPA VIOLATIONS**</u>

31.    Defendant is a mobile application developer and operator.  Defendant developed and operates Tribe, a video messaging application for Apple and Android mobile devices (the "Tribe App").

32.    The Tribe App has been downloaded over half a million times and, on average, has 40,000 daily users.  In early 2016, Defendant received $3 million in seed funding, with the aim of challenging dominant chat applications like Snapchat and Messenger.

33.    An individual wishing to use Defendant's service must first download the Tribe App on his/her mobile device.

34.    Once downloaded, the Tribe App directs the user through the following onboarding screens:





35.     As plainly demonstrated by the above onboarding screens, Defendant never notifies users of the Tribe App that by allowing the Tribe App to access their contacts, the Tribe App will instantly transmit the telephone numbers to Defendant's automatic telephone dialing system and cause that system to transmit a generic text message to the user's contacts.  This is precisely what occurs without any type of notice to the Tribe App users.

36.     In other words, a user of the Tribe App is deceived into providing Defendant with access to his/her contacts list.  Once in possession of a user's contact list, Defendant stores the numbers in its text messaging database and, subsequently, Defendant's automatic telephone dialing system causes the text messages to be transmitted to unsuspecting individuals.  The messages are transmitted automatically and without any type of human intervention before transmission.

37.     Notably, the text messages are sent from Defendant's own telephone numbers, and not from users' telephone numbers.  The numbers used by Defendant to transmit its spam texts are fake and untraceable, otherwise known as "spoofed" telephone numbers.

38.     The purpose of Defendant's text messages is to invite others to download the Tribe App and purchase Defendant's services.

39.     At no point prior to sending its unsolicited text messages does Defendant obtain any type of consent from the recipients of the messages.

40.     Further, the user of the Tribe App is not given any type of control over the content of the texts or the timing of when those texts are sent.  The user is never shown a sample of the text message before it is sent to his/her contacts and has no control over when the text messages are actually sent to his/her contacts.

41.     Defendant, not the Tribe App user, has sole control over the content of the invitational texts and sends the text messages at its own discretion.  In all, Defendant sends the text messages at issue with little or no obvious control by the users of the Tribe App.

42.     As a result of Defendant's deceptive practices, the Tribe App users play no substantive role in deciding whether to send the invitational text messages at issue, and have no control over the content or timing of the messages.

43.     Considering the goals and purposes of the TCPA, and the totality of the facts and circumstances surrounding the placing of the text messages at issue, Defendant is considered the maker of the text messages because it was so involved in the placing of the text messages as to be deemed to have initiated the messages.

44.     Defendant's failure to disclose that it will cause unsolicited text messages to be sent to users' contacts has resulted in numerous on-line complaints by users of the Tribe App:

- @HeyTribe Installed your app and you spammed my entire address book with invites without my permission. Not cool

- @heytribe you fkers are spamming my contacts like crazy. Garbage lead gen.  Terrible growth idea.  And your UX is stressful and not intuitive.

- Hey @HeyTribe, you immediately lose my trust by automatically inviting everyone in my contacts to you app. LAZY (inappropriate) marketing!

10

- @HeyTribe It's really not okay to send an SMS to all the contacts on my phone without my consent... #whataboutprivacy #screwthis

- @HeyTribe STOP spamming all my professional contacts!!! This is such shady practice. Good luck with your App Store ratings

- steer clear of @heytribe, a new messaging app. it's full of dark patterns that spam your contact list nonconsensually.

- @sequoia - FYI your portco @HeyTribe is juicing its user acq numbers by spamming new users' contacts without permission

- did anyone else miss where in the @HeyTribe setup process we gave them permission to text all friends to join??? seems pretty sketch

- @HeyTribe hey does tribe message your contacts when you sign up? I didn't invite anyone, but a few have had texts?!

- yo @HeyTribe f*ck you for this shameless contact spamming, never downloading your bullsh*t app

- @HeyTribe do you have any information for us here?? Why were all of those texts going out to our contacts without our permission?[2]

45.    Similarly, recipients of Defendant's spam, aggravated by the nuisance, disruption, and invasion of privacy caused by Defendant's texts, have voiced their complaints on various on-line forums:

- I'd never even heard of @heytribe, let alone downloaded it, and I've received 32 notifications from them saying my friends invited me. NOPE[3]

- Up to 47 @HeyTribe invites today…this is not a good way to build a customer base.

---

[2] https://techcrunch.com/2016/12/07/sequoia-backed-video-chat-app-tribe-spammed-its-customers-address-books/.

[3] https://mobile.twitter.com/toppsyturby/status/806307763483648000.

- STOP STOP STOP @HeyTribe

- Received a spam text from @heytribe - best way to get attention AND lose mindshare #spam #badpractice

- @HeyTribe If I'm not interested at 2:29pm when "Alex and 9 others invite me to join," odds are I'm not at 4:21pm either. Stop spamming me.

- Idk who at @HeyTribe thought it was a good idea to text ppl's entire contact list when they download ur app but...STOP. TEXTING. ME.[4]

- **Stop texting me, I don't want this stupid app**

  Got a text from makers of this app saying "Jessica" and my "other friends" wanted me to download it ... but I don't have any friends named Jessica.

  How can I stop receiving these bogus texts? Annoying. Leave me alone![5]

46.    The sizeable number of complaints found on the Internet by recipients of Defendant's unsolicited text messages establishes that at least several thousand consumers have received Defendant's text messages.

47.    As demonstrated by the above complaints, Defendant typically uses the following generic format for its text messages: "[Alex or Jessica] and [number] other friends invited you to join Tribe: [link]."

48.    The impersonal and generic nature of Defendant's text messages, combined with the large number of messages sent by Defendant, demonstrates that Defendant utilizes an ATDS in transmitting the messages.

---

[4] *Id.*

[5] https://itunes.apple.com/app/id1053998412; (emphasis original).

49.     Specifically, upon information and belief, Defendant utilizes a combination of hardware and software systems to send the text messages at issue in this case.  The systems utilized by Defendant have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

### FACTS SPECIFIC TO PLAINTIFF

50.     On April 7, 2017, April 8, 2017, and April 9, 2017, Defendant caused the following automated text message to be sent to Plaintiff's cellular telephone number ending in 4987 (the "4987 Number"):

Text Message
Friday 9:56 PM

Hey! Jessica and 8 other friends invited you to join Tribe: http://get.tribe.pm/pY1w/ MaCkaZg8XB !

Saturday 2:52 PM

Hey! Jessica and 12 other friends invited you to join Tribe: http://get.tribe.pm/pY1w/ MaCkaZg8XB !

Today 1:43 PM

Hey! Jessica and 13 other friends invited you to join Tribe: http://get.tribe.pm/pY1w/ MaCkaZg8XB !

51.     The text message received by Plaintiff originated from telephone number 217-409-6528, a "spoofed" number created by Defendant.

52.     The text messages received by Plaintiff are identical to the generic messages received by thousands of other individuals as outlined above.  This fact establishes that Defendant used an ATDS in transmitting the above text message to Plaintiff.

53.     The link (http://get.tribe.pm/pY1w/MaCkaZg8XB) contained in the text messages received by Plaintiff is a link to Defendant's website (https://tribe.pm), where Defendant markets its application.   Therefore, Defendant's text message constitutes telemarketing because it encouraged the future purchase or investment in property, goods, or services – i.e. Defendant's mobile application.

54.     Plaintiff received the subject text within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.  Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

55.     Plaintiff has never used Defendant's application or services, has never downloaded the Tribe App on his mobile device, and has never had any type of relationship with Defendant.

56.     Plaintiff has never provided Defendant his telephone number, or provided any type of consent to receive automated text messages from Defendant.

57.     Plaintiff is the subscriber and sole user of the 4987 Number, and is financially responsible for phone service to the 4987 Number.

58.     Through its telemarketing calls, Defendant violated Plaintiff's substantive rights under the TCPA.

59.     Defendant's TCPA violation caused Plaintiff a particularized and concrete injury.

60.     Plaintiff personally received an automated/prerecorded telemarketing call from Defendant on his cellular telephone.

61.     Further, Plaintiff suffered the following concrete injuries:

14

a.   Invasion of his privacy;

b.   Inconvenience;

c.   Unwanted occupation of his time and mental energy;

d.   Unwanted occupation of his cellular telephone;

e.   Nuisance;

f.   Trespass on his cellular telephone; and

g.   Aggravation and annoyance.

### CLASS ACTION ALLEGATIONS

62.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

63.     Plaintiff represents, and is a member of the following classes:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, received a text message made through the use of an automatic telephone dialing system, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, who had not expressly consented to receiving such calls**

### Numerosity

64.     Upon information and belief, based on the widespread Internet complaints about Defendant's telemarketing text messages, the members of the class are believed to number in the thousands or millions such that joinder of all members is impracticable.

65.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**Common Questions of Law and Fact**

66.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

      a.   Whether Defendant sent non-emergency text messages to Plaintiff's and Class members' cellular telephones using an autodialer;

      b.   Whether Defendant can meet its burden of showing that it obtained prior express consent to make such calls;

      c.   Whether Defendant's conduct was knowing and willful;

      d.   Whether Defendant is liable for damages, and the amount of such damages; and

      e.   Whether Defendant should be enjoined from such conduct in the future.

67.     The common questions in this case are capable of having common answers. Defendant routinely places automated calls to telephone numbers assigned to cellular telephones thus, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**Typicality**

68.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**Protecting the Interests of the Class Members**

69.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained counsel who is experienced in prosecuting class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

16

**<u>Proceeding Via Class Action is Superior and Advisable</u>**

70.      A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes are economically unfeasible and procedurally impracticable.   While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

71.      The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.   For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**<u>VIOLATION OF THE TCPA, 47 U.S.C. § 227(b)</u>**
**(On Behalf of Plaintiff and the Class)**

72.      Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

73.      It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

74.     Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to transmit text messages to the cellular telephones of Plaintiff and Class Members.

75.     These calls were made without regard to whether Defendant had first obtained express consent to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and Class Members when the subject calls were made.

76.     Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system transmit telemarketing text messages to the cell phones of Plaintiff and Class Members without their prior express written consent.

77.     As a result of Defendant's conduct, and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the Class Members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff, Alexander M. Rattner, on behalf of himself and the other members of the Class, pray for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.  An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c.  An award of actual and statutory damages; and

d.  Such further and other relief the Court deems reasonable and just.

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

78.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

79.     At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

80.     Specifically, on or about December 6, 2016, Defendant posted a public response to a complaint from a recipient of Defendant's text spam:

> @toppsyturby sorry Katie, we've fixed this issue.  Thank you for helping us improve the Tribe platform.[6]

81.     Additionally, in response to a media inquiry regarding telemarketing complaints, Defendant's founder, Cyril Paglino, stated:

> We quickly noticed some issues with a subset of our users. The issue was solved as soon as it was brought to our attention, in few hours….We never want to violate our user's trust and acutely understand how vital that is to our community. We highly value our user's privacy, and we always want Tribe to be a place where you can communicate safely and securely.

82.     Despite acknowledging consumer complaints and promising that it would cease its abusive conduct, Defendant continued engaging in spam text messaging to promote its services.

83.     Defendant knew that it did not have prior express consent to send these text messages, and knew or should have known that its conduct was a violation of the TCPA.

84.     Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls, the Court should treble

---

[6] https://mobile.twitter.com/toppsyturby/status/806307763483648000.

the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

85.     As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff, Alex Rattner, on behalf of himself and the other members of the Class, pray for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.  An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c.  An award of actual and statutory damages; and

d.  Such further and other relief the Court deems reasonable and just.

## <u>JURY DEMAND</u>

Plaintiff and Class Members hereby demand a trial by jury.

Dated:  April 10, 2017

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

and

**SHAMIS & GENTILE, P.A.**

*/s/ Andrew J. Shamis*
Andrew J. Shamis
Florida Bar No. 101754
*efilings@sflinjuryattorneys.com*
14 NE 1st Avenue, Suite 400
Miami, Florida  33132
(t) (305) 479-2299
(f) (786) 623-0915