UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF FLORIDA

ALEXANDER M. RATTNER, individually
and on behalf of all others similarly situated,

    Plaintiff,   **CLASS ACTION**

vs.   CASE NO. 17-cv-21344-UU

TRIBE APP, INC.,

    Defendant.
_____/

KENNETH HORSLEY, individually
and on behalf of all others similarly situated,   CASE NO. 1:17-cv-23111-JLK

    Plaintiff,

vs.

TRIBE APP, INC.,

    Defendant.
_____/

**PLAINTIFFS' UNOPPOSED AMENDED[1] MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

    Plaintiffs, Alexander M. Rattner ("Rattner") and Kenneth Horsley ("Horsley"), individually and on behalf of all others similarly situated (identified herein as the "Settlement Class"), respectfully request, pursuant to Fed. R. Civ. P. 23(e), that the Court enter an order (1) preliminarily approving the parties' proposed Class Action Settlement Agreement and Release (the "Agreement"), attached hereto as **Exhibit 1**, certifying the Settlement Class, appointing Rattner

---

[1] Pursuant to the Court's Order, [ECF No. 47], Plaintiffs' Motion for Preliminary Approval is amended to address several areas of concern raised by the Court during the conference call held on October 4, 2017.

and Horsley as the class representatives and Hiraldo P.A. and Shamis & Gentile P.A. as Class Counsel, (2) approving the form of the Class Notice attached as **Exhibit B** to the Agreement and its dissemination to the Settlement Class by U.S. mail and website, and (3) setting dates for opt-outs, objections, and a fairness hearing.

## I. INTRODUCTION

The Agreement was negotiated over the course of four days following the 30(b)(6) deposition of Defendant Tribe App, Inc. ("Defendant"). Prior to the negotiations that resulted in the Agreement, the parties engaged in an in-person settlement conference, a telephonic mediation conducted by mediator Joseph Matthews, Esq., and several telephone and e-mail negotiations. The parties also engaged in substantial written discovery, with the production of over 80,000 pages of documents by Defendant, third-party discovery, and motion practice.

The Agreement provides, *inter alia*, for a Settlement Fund of up to $200,000.00, and payments of up to $500.00 per text message to Settlement Class members who submit Claims and potential awards of attorneys' fees and incentive awards to the named Plaintiffs, as well as injunctive relief as outlined below. The parties will create a website and notice will be sent by U.S. mail to those class members for whom mailing addresses can be determined. The Agreement provides for a release of claims as set forth therein. A proposed Preliminary Approval Order is attached as **Exhibit 2** and will be submitted to the Court electronically as directed. If approved, the Agreement will resolve a hard-fought and costly litigation. Through this unopposed motion, Plaintiffs seek entry of an order providing for the following:

1. Preliminary approval of the Agreement;
2. Preliminary certification of the Settlement Class, and appointment of the Plaintiffs as Class Representatives and Plaintiff Rattner's counsel as Class Counsel;
3. Approval of Epiq Systems, Inc., as the Settlement Administrator;
4. Approval of the Settlement Class Notice Program;
5. Approval of the Claims process set forth in the Agreement; and
6. The scheduling of a Fairness Hearing.

Plaintiffs submit that the proposed Agreement is fair and within the range of similar TCPA class action settlements given Defendant's financial circumstances as outlined below. The Agreement provides relief to the Settlement Class where their recovery, if any, would otherwise be uncertain, especially given Defendant's willingness to continue its vigorous defense of the case.

The Agreement was reached only after substantial discovery and extensive arms-length negotiations. For these reasons, and as further discussed below, Plaintiffs request the Court's preliminary approval of the Agreement.

## II. BACKGROUND

### A. Facts

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…." Defendant is a mobile application developer and operator. Defendant developed and operates the Tribe App, a video messaging application for Apple and Android devices. An individual wishing to use the Tribe App must first download the application on his/her mobile telephone. Once installed, the Tribe App directs users through a series of "onboarding" screens to set up the application. During this process, Plaintiffs allege that Defendant obtained Settlement Class cell phone numbers and sent them text message invitations encouraging recipients to download the Tribe App. Plaintiff Rattner was the alleged recipient of three (3) text messages from Defendant. Plaintiff Horsley was the alleged recipient of one text message from Defendant. Plaintiffs filed the instant action alleging violations of the TCPA.

### B. Procedural History

On or about April 10, 2017, Plaintiff Rattner filed his Complaint in the United States District Court for the Southern District of Florida alleging that Defendant improperly sent text messages in violation of the TCPA (the "Rattner Action"). [D.E. 1]. Plaintiff Rattner alleged that the "Tribe App did not inform its users that by granting the Tribe App. access to its users' contact list that the Tribe App would send text messages to certain individuals within the user's contact list." Plaintiff Rattner sought damages under the TCPA on behalf of himself and the following proposed class:

> All persons within the United States who, within four years prior to the filing of this Complaint, received a text message made through the use of an automatic telephone dialing system, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, who had not expressly consented to receiving such calls.

On May 2, 2017, Defendant filed an Answer and Affirmative Defenses in response to Plaintiff Rattner's Complaint. [D.E. 11].

On or about May 3, 2017, Horsley filed a complaint in the United States District Court for the Northern District of California alleging that Defendant improperly sent text messages under substantially similar facts and legal theories as the Rattner Action. Horsley sought damages under the TCPA on behalf of himself and the following proposed class:

> All persons in the United States from a date four years prior to the filing of the initial complaint in this case through the present who (1) Defendant (or a third person acting on behalf of the Defendant) sent text messages, (2) to the person's cellular telephone number, and (3) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

The complaint filed by Horsley addressed similar conduct and sought to represent all of part of the class sought to be represented by Plaintiff Rattner.

On June 1, 2017, Defendant filed a Motion to Stay, seeking to stay the Rattner Action pending a ruling by the D.C. Circuit of Appeals in *ACA International v. Federal Communications Commission*, No. 15-1211, D.E. 1562251 (D.C. Cir. July 10, 2015). [D.E. 16]. On June 2, 2017, Plaintiff Rattner filed his Response in Opposition to Defendant's Motion to Stay. [D.E. 18]. The Court ultimately denied the request for a stay. On June 8, 2017, the Court entered a scheduling order and discovery commenced shortly thereafter.

Specifically, Plaintiff Rattner served a Request for Production, Request for Admissions, and Interrogatories on Defendant. On July 3, 2017, Defendant responded to Plaintiff's written discovery requests, and the parties subsequently conferred on various discovery objections. In response to Plaintiff's discovery requests, Defendant produced over 80,000 pages of documents. Defendant also served a Request for Production on Plaintiff, and Plaintiff responded by producing documents in his possession. Plaintiff also served a subpoena on third party InfoBip, Ltd. InfoBip responded by producing several hundred pages of documents and Excel spreadsheets. Finally, on July 24, 2017, Plaintiff's counsel deposed Defendant's Rule 30(b)(6) corporate designee.

As part of the Agreement, Plaintiff Horsley agreed to transfer the Horsley Action to the Southern District of Florida and consolidate the Horsley Action with the Rattner Action. On June 5, 2017, Defendant moved to transfer the Horsley Action to this Court. On August 15, 2017, the Horsley Action was transferred to this Court and Defendant subsequently moved to consolidate the Horsley Action with the Rattner Action.

4

### C. Settlement Negotiations

From the commencement of the Rattner Action, the parties engaged in various settlement negotiations. Rattner and Defendant held an informal settlement meeting on May 15, 2017, which was unsuccessful. Defendant then filed a motion asking the Court to enter an order referring this action to mediation [D.E. 15]. Rattner opposed that motion on the grounds that he needed to conduct written discovery and depositions before engaging in mediation. [D.E 17]. While the Court denied Defendant's Motion for Mediation by order dated June 2, 2017 [D.E. 22], the Court subsequently entered an Order of Referral to Mediation in conjunction with its Case Management Order dated June 8, 2017. [D.E. 24].

Even after scheduling a mediation for August 30, 2017, the parties continued to engage in settlement negotiations throughout the month of June and into mid-July. On July 19, 2017, Rattner, Rattner's counsel, Defendant, and Defendant's counsel participated in an informal settlement conference telephone call with their selected mediator, Joseph Matthews, Esq.

On Monday July 24, 2017, Rattner deposed Defendant's 30(b)(6) corporate representative. Thereafter, the parties continued to engage in settlement discussions and entered into the Settlement on July 29, 2017, after four (4) days of negotiations.

### D. Defendant's Financial Circumstances

Although Defendant denies any liability or wrongdoing related to this Action, Defendant sought immediate settlement negotiations because of its limited financial resources. While Defendant previously raised approximately $2.5 million in May 2016, those funds were almost completely depleted by the time that Plaintiff Rattner filed this lawsuit in April 2017. This lawsuit – and the lawsuit subsequently filed by Horsley – have made raising any additional funds by Defendant very difficult, given the potential statutory damages, even with Defendant contesting any liability or wrongdoing.

A financial declaration submitted by Defendant sets forth Defendant's limited resources. The declaration shows that Defendant presently has assets totaling $997,000.00, but has monthly operating costs of approximately $180,000.00. See **Exhibit C** to Agreement at ¶¶ 4 and 6. Further, Defendant does not presently generate revenue. *Id*. at ¶ 5. Moreover, Defendant's investors are unwilling to provide additional funding without a settlement. *Id*. at ¶ 10. Defendant will go bankrupt if this lawsuit were to continue without a settlement. *See id*. at ¶ 8. Moreover, with only $997,000.00 in assets, any certification of a class would almost certainly impose annihilative

damages. The Settlement Fund of $200,000.00 represents 20% of Defendant's total assets. *Id*. at ¶ 7. Defendant's willingness to commit such a large percentage of its total assets supports a finding that the Agreement is a just and fair resolution of the claims in this litigation.

### III. SUMMARY OF THE SETTLEMENT

If approved by the Court after notice to the Settlement Class, the parties' settlement agreement would resolve this action and the controversy regarding all text messages sent by Defendant.

Some of the material terms of the Agreement are as follows:

A. <u>The Settlement Class</u>: Pursuant to Fed. R. Civ. P. 23, the Parties agree to certification, for purposes of the Settlement and the Agreement only, of the following Settlement Class: "All Persons, in the United States, who received (i) one or more text message (ii) sent by or on behalf of Defendant (iii) without a user of the Tribe App. manually selecting that Person's name through the Tribe App. and (iv) that contained a link to download the Tribe App." Specifically excluded from the Settlement Class are the following Persons: Defendant and its respective parents, subsidiaries, divisions, affiliates, associated entities, business units, predecessors in interest, successors, successors in interest and representatives and each of their respective immediate family members; Class Counsel and Counsel for Horsley; and the Judges who have presided over the Litigation and any related cases.

B. <u>Injunctive Relief</u>: Defendant agrees to the entry of an injunction. Specifically, Defendant will not send or cause to send any text messages to the contact of a user of the Tribe App., as a result of a user of the Tribe App. using the Tribe App., without a user of the Tribe App. manually selecting that Person or inputting that Person's contact information through the Tribe App., without a user of the Tribe App. writing any message accompanying any text message to the Person, and without that text message coming from the user's phone number. If, when Defendant allows a user of the Tribe App to invite a Person, through the Tribe App., by text message, to use the Tribe App., Defendant will require that the user be the one to manually input that Person's phone number into the text message, that the

  user write any message accompanying any text message to the Person to be invited to the Tribe App, and that the text message come from the user's phone number.

C.  <u>The Class Representative and Class Counsel</u>:  The parties have agreed that Plaintiffs are the Class Representatives and that Hiraldo, P.A. and Shamis & Gentile P.A. are Class Counsel for the Settlement Class.

D.  <u>Settlement Fund</u>:  Defendant agrees to make available up to $200,000.00 (the "Settlement Fund"), which will be used to pay all valid class member claims ("Awards"), reasonable attorneys' fees and costs ("Attorneys' Fee Awards"), incentive awards to the Plaintiffs ("Incentive Awards"), and notice and administration costs ("Notice And Administration Costs").

E.  <u>Monetary Relief to the Members of the Settlement Class</u>:  Settlement Class Members who submit a Valid Claim within 60 days from the date the Class Notice and Claim Form to submit written claims is sent, shall receive a pro rata share of the Settlement Fund, up to $500.00 per text message sent by or on behalf of Defendant, without a user of the Tribe App. manually selecting that Person's name through the Tribe App., and that contained a link to download the Tribe App., after any Notice And Administration Costs; Attorneys' Fee Award; and the Incentive Award have been deducted from the Settlement Fund.

F.  <u>Class Notice</u>: The parties have agreed to notify the Settlement Class about the settlement by sending the notice and claim form by U.S. mail.  The notice includes instructions about opting out, objecting, or submitting a claim form to the Settlement Administrator by mail.  In addition, the parties have agreed to publish notice in a manner that satisfies due process.  Finally, the parties will cause to be created a settlement website that will provide information and relevant documents related to the Settlement, including a downloadable Claim Form that may be submitted by U.S. Mail..  The notice program is designed to provide the Settlement Class with important information regarding the settlement and their rights thereunder, including a description of the material terms of the settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which they may object to the Agreement, Class Counsel's fee application and/or the request for an Incentive Award; the date of the

      Fairness Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents. A copy of the proposed Class Notice is attached as **Exhibit B** to the Agreement.

G.    <u>Claims</u>:

    1.    The class notice includes a simple Claim Form for submitting claims for cash Awards. The Claim Form is attached to the Settlement Agreement as **Exhibit A**. The Claim Form submitted by each class member must be signed under penalty of perjury and submitted by hard copy. A claiming class member must provide the following information: (1) name; (2) current address; (3) cellular telephone number(s) at which she or he was sent a text message; and (4) a current contact telephone number. Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will receive a cash payment. Untimely Claim Forms will be rejected and those Settlement Class members will not receive a payment. If those same Settlement Class members also fail to timely opt-out, they will remain in the Settlement Class and their claims will be released. Settlement Class Claimants will be sent their Settlement Fund Payments to the address they submitted on their Claim Form.

    2.    Settlement Administrator. The Parties, subject to approval of the Court, have selected Epiq Systems, Inc. ("Epiq") as the Settlement Administrator. After obtaining bids from various settlement administrators, Epiq submitted the most cost effective bid estimated not to exceed $75,000.00. *See* Decl. of Charles C. Marr, Esq. at ¶ 8 attached hereto as **Exhibit 3**. In order to locate Class Members, Epiq will conduct a historical reverse lookup of telephone numbers to determine the mailing address of the owner of the number at the time a text message was transmited by Defendant. *See id.* at ¶ 6. Once the Class Members are identified, Epiq will be responsible for, among other things:

        a.    The CAFA Notice as required by statute;

       b. The Settlement Class Notice Program as set forth in the Agreement;

       c. The Settlement Website; and

       d. The claims' process set forth in Section VIII of the Agreement as well as any additional processes agreed to by Class Counsel and Defendant Counsel and subject to the Court's supervision and direction as circumstances may require.

*See id*. at ¶ 4; **Exhibit 1** at IV.A.

H. <u>Release</u>: In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Agreement, in this action against Defendant and the released parties.

I. <u>Attorneys' Fees and Costs and Class Representative Award</u>: Class Counsel and Counsel for Horsley will apply to the Court for an aggregate award of attorneys' fees and reimbursement of costs and to be paid from the Settlement Fund. There is no agreement on attorneys' fees and costs. Class Counsel and Counsel for Horsley will file a motion for attorneys' fees and costs separately and will support the request for attorney's fees and costs in the motion for attorneys' fees and costs. Given the size of the Settlement Fund and limited recovery available to the Class, Class Counsel and Counsel for Horsley do not anticipate requesting in excess of 20% of the Settlement Fund to cover their attorney's fees. Class Counsel and Counsel for Horsley agree that once Defendant has funded the Settlement Fund with $200,000.00, Defendant's and the Released Persons' obligations to Class Counsel and Counsel for Horsley shall be fully satisfied and discharged, Class Counsel and Counsel for Horsley shall have no further or other claim against Defendant, including but not limited to any attorneys' lien claim, and that Defendant shall have fully discharged any obligation to pay fees, costs, and expenses to any lawyers claiming to represent the interests of Plaintiffs or the Settlement Class.

**IV.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

    **A.  Legal Standard**

As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citations omitted). In the second step, after notice to settlement class members and time and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id.*

The standard for granting preliminary approval is low—a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46 at 62, 64-65 (1982)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

Class Counsel and Defendant respectfully request that the Court take the first step in the process and grant preliminary approval. The Agreement is clearly within the range of reasonableness, and satisfies all standards for preliminary approval.

### B. Recovery for Class Members

As indicated above, Defendant has agreed to make available up to $200,000.00 to fund the Settlement Fund. Administrative costs, which includes locating Class Members and providing them notice, is not estimated to exceed $75,000.00. *See* **Exhibit 3**, Decl. of Charles C. Marr, Esq. Given the size of the Settlement Fund, Class Counsel and Counsel for Horsley do not anticipate requesting more than 20% of the Settlement Fund to cover their attorney's fees. After administrative costs and fees are deducted, roughly $100,000.00 will remain for Class Member claims. The Class Administrator, Epiq, anticipates a claims percentage of 2 to 10%. *See id*. at ¶ 7. This is based on Epiq's vast experience in administering TCPA class claims.

Additionally, Defendant has agreed to an injunction prohibiting it from violating the TCPA in the future. Specifically, Defendant will not send or cause to send any text messages to the contact of a user of the Tribe App., as a result of a user of the Tribe App. using the Tribe App., without a user of the Tribe App. manually selecting that Person or inputting that Person's contact information through the Tribe App., without a user of the Tribe App. writing any message accompanying any text message to the Person, and without that text message coming from the user's phone number. If, when Defendant allows a user of the Tribe App to invite a Person, through the Tribe App., by text message, to use the Tribe App., Defendant will require that the user be the one to manually input that Person's phone number into the text message, that the user write any message accompanying any text message to the Person to be invited to the Tribe App, and that the text message come from the user's phone number.

### C. The Criteria for Preliminary Approval Have Been Satisfied

Each of the relevant factors weighs heavily in favor of preliminary approval of the Agreement. First, the Agreement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Agreement demonstrates that it fits well within the range of reasonableness, such that approval is appropriate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs and Class Counsel believe that the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial. Defendant contends that Plaintiffs' claims are unfounded, denies any liability, and has shown a willingness to litigate vigorously. The Parties concluded that the benefits of the Agreement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time and expenses associated with completing trial and any appellate review.

### D. The Agreement is the Product of Good Faith, Arms-Length Negotiations

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel"). The Agreement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this action.

Class Counsel zealously represented their client throughout the litigation, and throughout the discovery process, which included the production and review of approximately 80,000 pages of documents, as well as preparing for and taking deposition of Defendant's Rule 30(b)(6) corporate designee. As detailed above, Class Counsel conducted a thorough analysis of Plaintiffs' claims and engaged in extensive discovery with Defendant and third parties. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery);

### E. The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate, and Reasonable

Class Counsel are confident in the strength of Plaintiffs' case, but are also pragmatic in their awareness of the various defenses available to Defendant, and the risks inherent in trial and post-judgment appeal. The success of Plaintiffs' claims, turn on questions that would arise at summary judgment, trial, and during an inevitable post-judgment appeal. Further, it still remains unclear whether Plaintiffs would be able to certify a class for resolution of the asserted claims at trial. Under the circumstances, Class Counsel appropriately determined that the Agreement outweighs the risks of continued litigation. Even if Plaintiffs and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). The Agreement provides substantial relief to Settlement Class Members, without further delay.

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $200,000.00 cash recovery in this case is more than reasonable, given Defendant's financial circumstances as discussed above, the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, a motion for class certification, a motion for summary judgment, *Daubert* motions, trial, and appellate review following a final judgment. There can be no doubt that the Agreement is a fair and reasonable recovery for the in light of Defendant's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation that Plaintiffs and all Settlement Class members would face absent a settlement.

### F. Certification of the Settlement Class is Appropriate

For settlement purposes, Plaintiffs and Class Counsel respectfully request that the Court certify the Settlement Class as defined above. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of the proposed Settlement Class will allow notice to inform Settlement Class members of the existence and terms of the Agreement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of 59,757 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendant's invitational text messages – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff is typical of absent Settlement Class members because he received a text message inviting him to download the Tribe App, and claims to have suffered the same injuries.

Plaintiffs and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class Members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests.

Further, Plaintiff Rattner and the Settlement Class are represented by qualified and competent Class Counsel who are well-respected members of the legal community, and who have experience in the areas of consumer rights and class action litigation. They have litigated, and are presently litigating, multiple cases nationally, and have the resources necessary to conduct litigation of this nature. *See* Declaration of Manuel S. Hiraldo, attached as **Exhibit 4**, and Declaration of Andrew Shamis, attached as **Exhibit 5**. Class Counsel, Manuel S. Hiraldo, was recently appointed as one of the class attorneys in the contested matter of *Mohamed v. Off Lease Only, Inc*. *See* No. 15-cv-23352, 2017 U.S. Dist. LEXIS 89031 (S.D. Fla. June 8, 2017) ("we find that Plaintiff's counsel will adequately protect the interests of the absent class members. Plaintiff's attorneys are experienced in prosecuting class actions and have demonstrated familiarity with the TCPA. Counsel has also demonstrated that they will capably advocate on Plaintiff's behalf, as reflected by the substantial motion practice in this action. Accordingly, we find the adequacy requirement of Rule 23(a)(4) to be satisfied with respect to Plaintiff and his attorneys").

15

Additionally, Class Counsel, Andrew Shamis, is counsel in a TCPA matter that recently received preliminary approval of an $8,000,000.00 settlement on behalf of a class of 80,000 text message recipients. *See Gottlieb v. Citgo Petroleum Corp*, No. 16-cv-81911, D.E. 61. In all, Class Counsel have diligently investigated and dedicated substantial time and financial resources to the investigation and prosecution of the claims at issue.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### G. The Proposed Notice Plan Should be Preliminarily Approved

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice program satisfies all of these criteria. As recited in the Settlement and above, the proposed notice plan will inform Settlement Class members of the substantive terms of the Agreement. It will advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Agreement, Class Counsel's Attorneys' fee application

and/or request for Service Award, or for opting-out of the Agreement, and how to obtain additional information about the Agreement. The notice plan is designed to reach a high percentage of Settlement Class members, and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

### H. Proposed Scheduling of Events

In connection with preliminary approval of the Agreement, Plaintiffs respectfully submit that the Court should also set a date and time for the Fairness Hearing. Other deadlines in the Agreement approval process are set forth in the Agreement as follows:

| Event | Date |
| --- | --- |
| Deadline for Settlement Administrator to complete Class Notice Program. Agreement at VII.F; VII.G. | 60 days after the Preliminary Approval Order has been executed and entered by the Court and received by counsel for the Parties (the "Notice Deadline") |
| Deadline for opting-out of Settlement and submission of objections. Agreement at II.X. | 60 days after the Notice Deadline |
| The last day that Settlement Class Members may submit a Claim Forms. Agreement at II.G. | 60 days after the Notice Deadline |
| Deadline for filing papers in support of Final Approval of the Settlement and Class Counsel's and Counsel for Horsley's application for an award of attorneys' fees and expenses. Agreement at X.R. | 45 days after the Notice Deadline |
| Responses to Objections. Agreement at X.M. | 7 days prior to the Fairness Hearing |
| The Fairness Hearing | Approximately 90 days after the Preliminary Approval Date |

### V. CONCLUSION

Based on the foregoing, Plaintiffs, Class Counsel, and Counsel for Horsley respectfully request that the Court: (1) grant preliminary approval of the Agreement; (2) certify for settlement purposes only the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Settlement Class Notice Program set forth in the

Agreement and approve the form and content of the notices and Claim Form, attached to the Agreement; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiffs as Class Representative; (6) appoint as Class Counsel the undersigned counsel; and (7) schedule a Fairness Hearing.  A Proposed Preliminary Approval Order is attached hereto as **Exhibit 2**.

**WHEREFORE**, Plaintiffs, respectfully requests an order granting the instant motion and for such other relief the Court deems appropriate under the circumstances.

## LOCAL RULE 7.1 CERTIFICATE

Pursuant to Local Rule 7.1, I hereby certify that counsel for Defendant does not oppose the instant motion or relief requested herein.

Date: October 13, 2017

Respectfully submitted,

**HIRALDO P.A.**

/s/ *Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Counsel for Plaintiff*

and

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Florida Bar No. 101754
*efilings@sflinjuryattorneys.com*
14 NE 1st Avenue, Suite 400
Miami, Florida  33132
(t) (305) 479-2299
(f) (786) 623-0915

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on October 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                */s/ Manuel S. Hiraldo*
                Manuel S. Hiraldo, Esq.
                mhiraldo@hiraldolaw.com
                Telephone: 954.400.4713