**UNITED STATES DISTRICT COURT**
**THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-cv-21344-UU**

ALEXANDER M. RATTNER, individually
and on behalf of all others similarly situated,

       Plaintiff,

vs.

TRIBE APP, INC.,

       Defendant.

_____/

**CASE NO. 1:17-cv-23111-UU**

KENNETH HORSLEY, individually
and on behalf of all others similarly situated,

       Plaintiff,

vs.

TRIBE APP, INC.,

       Defendant.

_____/

**CLASS COUNSEL'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT, AND INCORPORATED MEMORANDUM OF LAW**

1

I.     **INTRODUCTION.**

During the course of litigation involving TCPA claims asserted by Plaintiffs on behalf of approximately 55,432 consumers who allegedly received automated text message(s) advertisements from Defendant Tribe App, Inc. ("Defendant"), Plaintiff Alexander Rattner ("Plaintiff Rattner") and Plaintiff Kenneth Horsley ("Plaintiff Horsley") (collectively, "Plaintiffs"), and Class Counsel negotiated the Settlement Agreement and Release, in the Court's record at [D.E. 48-1] and attached as *Exhibit A* ("Agreement," "Settlement Agreement," or "Settlement").[1]  The Settlement, which consists of, among other things, Defendant's agreement to fund a Settlement Fund of up to $200,000.00 to pay all Awards, Attorneys' Fee Awards, Incentive Awards, and Notice And Administration Costs – is a very good result for the Settlement Class given the circumstances, including the Defendant's financial condition.  Based on the controlling legal standards and supporting facts, the Settlement is fair, adequate and reasonable.

Plaintiffs and Class Counsel now seek Final Approval of the Settlement.  Class Counsel also request that the Court award the Incentive Awards to Plaintiffs as class representatives, whose willingness to represent the Settlement Class and participation in the Litigation helped make the Settlement possible.

Plaintiff Rattner alleges that in 2017 he received three automated text message advertisements on his cellular telephone from Defendant. [D.E. 1 ¶ 50]. On April 10, 2017, Plaintiff Rattner filed a class action complaint against Defendant alleging that Defendant violated the TCPA, a federal privacy statute which affords consumers a private right of action, seeking

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement.

statutory damages for the Class. [D.E. 1].

Plaintiff Horsley alleges that in January 2017 he received three automated text message advertisements on his cellular telephone from Defendant. [*Horsley* case, D.E. 1 ¶ 31]. On May 3, 2017, Plaintiff Horsley filed a class action complaint against Defendant alleging that Defendant violated the TCPA.

The Agreement resulted from and is the product of extensive, good faith, and arm's length settlement negotiations since May 2017, including telephonic and in-person negotiations. Plaintiffs and Defendant participated in a mediation telephone call before Mediator Joseph Matthews on July 19, 2017.   Plaintiffs and Class Counsel investigated the facts and law underlying the claims asserted in the Litigation. Plaintiffs' Counsel also engaged in numerous discussions with Defendant's counsel regarding the claims.   Defendant continues to deny all material allegations and claims asserted in the Litigation and the Complaints filed by Plaintiffs, and it denies all allegations of wrongdoing and liability.   Defendant further contends that the Litigation is not amenable to class certification and that Plaintiffs and the class they seek to represent are not entitled to any form of damages or relief.   In addition, Defendant maintains that it has meritorious defenses to all claims alleged in the Litigation and it is prepared to defend the Litigation.   Only because of the risks, uncertainties, burden, and expense of continued litigation, and not as an admission of any guilt, does Defendant desire to settle the Litigation on the terms set forth herein.

Plaintiffs and their counsel believe that the claims asserted in the Litigation have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation and any subsequent appeal, Plaintiffs believe that it is desirable that the Litigation be fully and finally compromised, settled, and terminated now with

3

prejudice, and forever barred pursuant to the terms and conditions set forth in the Settlement Agreement. Plaintiffs and their counsel have concluded that the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Litigation. The Agreement is the result of extensive mediation and negotiations.

The Agreement provides, *inter alia*, for a Settlement Fund of up to $200,000.00, which will be used to pay all Awards, Attorneys' Fee Awards, Incentive Awards, and Notice and Administration Costs.  Subject to the terms of the Settlement Agreement, members of the Settlement Class who submit a valid claim within 60 days from the date of the Class Notice and Claim form, shall receive a pro rata share of the Settlement Fund, up to $500.00 per text message sent by or on behalf of Defendant, without a user of the Tribe App manually selecting that Person's name through the Tribe App., and that contained a link to download the Tribe App., after any Notice and Administration Costs; Attorneys' Fee Award; and the Incentive Awards have been deducted from the Settlement fund.  The parties created a website and notice was sent by U.S. mail to those class members for whom mailing addresses could be determined.  The Agreement provides for a release of claims as set forth therein.

Plaintiff Rattner submitted the proposed Agreement [D.E. 48-1], and it was determined by the Court that is fair and within the range of similar TCPA class action settlements given Defendant's financial circumstances as was outlined in the Amended Motion for Preliminary Approval of Class Action Settlement [D.E. 48]. The Agreement provides relief to the Settlement Class where their recovery, if any, would otherwise be uncertain, especially given Defendant's willingness to continue its vigorous defense of the case and dire financial situation.  The Agreement was reached only after written discovery and extensive arms-length negotiations.

For these reasons, and as further discussed below, Plaintiffs request the Court's final approval of the Agreement.

On December 1, 2017, the Court granted Preliminary Approval to the Settlement, the Court then amended the Preliminary Approval on December 4, 2017 directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval of the Settlement. [D.E. 55]; [*Horsley* case, D.E. 41].

Plaintiffs now submit that final approval is now appropriate because the Settlement is fair, reasonable, and adequate.

## II.     SUMMARY OF THE LITIGATION AND MEDIATION.

On or about April 10, 2017, Plaintiff Rattner filed his Complaint in the United States District Court for the Southern District of Florida alleging that Defendant improperly sent text messages in violation of the TCPA. [D.E. 1]. Plaintiff Rattner alleged that he and members of the class received text messages from Defendant without prior express consent or express written consent, which harmed him and the class. Plaintiff Rattner sought damages under the TCPA on behalf of himself and the proposed class.

On or about May 3, 2017, Plaintiff Horsley filed his Complaint in the United States District Court for the Northern District of California alleging that Defendant improperly sent text messages in violation of the TCPA. [*Horsley* case, D.E. 1]. Plaintiff Horsley alleged that he and members for the class received text messages from Defendant without prior express consent or express written consent, which harmed him and the class. Plaintiff Horsley's case was consolidated in Plaintiff Ratner's case in the Southern District of Florida on August 21, 2017 [*Horsley* case, D.E. 37].

On May 1, 2017, Defendant filed an Answer and Affirmative Defenses in response to Plaintiff Rattner's Complaint. [D.E. 11]. On June 8, 2017, the Court entered a scheduling order and discovery commenced shortly thereafter. [D.E. 23].   Plaintiff Rattner served Requests for Production, Requests for Admissions, and Interrogatories on Defendant. Defendant responded to the written discovery and produced hundreds of pages of documents. Thereafter, the parties met and conferred several times concerning the coordination of the Rule 30(b)(6) deposition of Defendant to occur in Miami-Dade County within the deadlines imposed by the scheduling order. Defendant noticed the issue before the Court on July 13, 2017 to be heard due to the deposition's scheduling problems [D.E. 30].  The Court set a hearing on the discovery motion for July 14, 2017.  *Id.*  Ultimately as a result of that hearing, Defendant was required to produce the Rule 30(b)(6) witness in Miami-Dade County within the time constraints of the scheduling order.  The parties attended telephonic mediation on July 21, 2017, in which they reached an impasse.   Defendant noticed a discovery hearing for July 31, 2017, [D.E. 36], due to perceived deficiencies in Plaintiff Rattner's response to a request for production.  At the 30(b)(6) deposition of Defendant's corporate representative, settlement discussions were revived with the parties ultimately filing a Notice of Settlement on July 28, 2017. [D.E. 37].

The Parties worked diligently to draft and finalize a written settlement agreement. On August 28, 2017, Plaintiffs and Class Counsel filed their Motion for Preliminary Approval. [D.E. 43].  That motion was amended on October 13, 2017. [D.E. 48].  The Court held a hearing on Preliminary Approval on November 30, 2017.  [D.E. 53].  On December 4, 2017, the Court entered the Preliminary Approval Order that, *inter alia*, directed the Class Notice be given to the Settlement Class and established deadlines for the filing of the Motion for Final Approval, the

timely submission or objections or requests for exclusions, and set a date for the Fairness Hearing. [DE 55]; [*Horsley* case, D.E. 41].

Although Defendant denies any liability or wrongdoing related to this Litigation, Defendant sought to attend mediation early because of its limited financial resources. Declaration of Andrew Shamis Supporting Motion for Award of Fees and Expenses ("Shamis Decl."), [D.E. 63-1, ¶ 12]. The Settlement Fund is significant given Defendant's limited financial resources. *Id*. Defendant's willingness to make such a significant amount available to the Settlement Class supports a finding that the Agreement is a just and fair resolution of the claims in this litigation.

## III.    SUMMARY OF RELIEF AFFORDED BY THE SETTLEMENT.

The Settlement terms are detailed in the Agreement in the court record at D.E. 48-1, also attached hereto as Exhibit A.

### A.  The Settlement Class.

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Settlement Class is defined as:

> All Persons, in the United States, who received (i) one or more text message (ii) sent by or on behalf of Defendant (iii) without a user of the Tribe App. Manually selecting that Person's name through the Tribe App. and (iv) that contained a link to download the Tribe App.

This class specifically excludes persons in the following categories: Defendant and its respective parents, subsidiaries, divisions, affiliates, associated entities, business units, predecessors in interest, successors, successors in interest and representatives and each of their respective immediate family members; Class Counsel and Counsel for Horsley; and the Judges who have presided over the Litigation and any related cases. [D.E. 48-1, III.A.1, 2].

**B.  Injunctive Relief.**

Defendant agreed to the entry of injunctive relief.  *Id.* at IV.D.  Defendant agrees that it will not send or cause to send any text messages to the contact of a user of the Tribe App., as a result of a user of the Tribe App. using the Tribe App., without a user of the Tribe App. manually selecting that Person or inputting that Person's contact information through the Tribe App., without a user of the Tribe App. writing any message accompanying any text message to the Person, and without that text message coming from the user's phone number.  *Id.* at IV.D.i.  If, when Defendant allows a user of the Tribe App to invite a Person, through the Tribe App., by text message, to use the Tribe App., Defendant will require that the user be the one to manually input that Person's phone number into the text message, that the user write any message accompanying any text message to the Person to be invited to the Tribe App, and that the text message come from the user's phone number.  *Id.* at IV.D.ii.

**C.  Monetary Relief.**

If approved, the Settlement allows that members of the Settlement Class who submit a Valid Claim within 60 days from the date the Class Notice and Claim Form to submit written claims is sent, shall receive a pro rata share of the Settlement Fund, up to $500.00 per text message sent by or on behalf of Defendant, without a user of the Tribe App. manually selecting that Person's name through the Tribe App., and that contained a link to download the Tribe App., after any Notice And Administration Costs; Attorneys' Fee Award; and the Incentive Award have been deducted from the Settlement Fund.  *Id.* at IV.B.

The Settlement Fund will be used to: (i) pay all Awards; (ii) pay any Attorneys' Fee Awards; (iii) pay Incentive Awards; and (iv) pay Notice And Administration Costs.  *Id.* at IV.A.

In order to receive a portion of the Settlement Fund, members of the Settlement Class are required to complete and mail a paper Claim Form postmarked on or before the Claim Deadline, which was April 3, 2018. *Id.* at VIII.B, D(i). Claim Forms were mailed by U.S. Mail to each Settlement Class member and are available through the Voice Response Unit and on the Settlement Website. Declaration of David Garcia, dated April 6, 2018 ("Garcia Decl."), at ¶¶ 4-8, 17. As of April 5, 2018, the Settlement Administrator has received a total of 1,018 complete Claim Forms. *Id.* at ¶ 13.

**D. Incentive Award.**

Plaintiffs are entitled to apply for Incentive Awards in the amount of $4,500.00 for Plaintiff Rattner and $4,500.00 for Plaintiff Horsley, which are to be paid from the Settlement Fund. [D.E. 48-1, VI.B]. The Incentive Award will compensate Plaintiffs for their time and effort in the Litigation, and for the risks they undertook in prosecuting the Litigation against Defendant. [D.E. 63-1, Shamis Decl. ¶ 14.].

**E. Attorneys' Fees and Costs.**

Class Counsel has petitioned the Court for an award of reasonable attorneys' fees plus expenses not to exceed Twenty Percent (20%), which is Forty Thousand Dollars ($40,000.00), to be paid from the Settlement Fund [D.E. 63].

**IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class

settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006) (quoting *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)). Indeed, "[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).

The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

### A. The Court Has Personal Jurisdiction Over the Settlement Class Because the Settlement Class Received Adequate Notice and an Opportunity to Be Heard.

In addition to having personal jurisdiction over the Plaintiffs, who are parties to this Litigation, the Court also has personal jurisdiction over the Settlement Class because they received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).

### B. The Best Notice Practicable Was Furnished.

The Notice Program was comprised of three parts: (1) Court-approved Mailed Notice; (2) published notice; and (3) a Settlement Website. Agreement, [D.E. 48. VII.E, F, G.]. In

10

conjunction with the above, a Voice Response Unit via toll-free number was available to provide information to Class Members and others seeking information about the proposed Settlement. Garcia Decl. at ¶¶ 14-16.

Each facet of the Notice Program was timely and properly accomplished.  The Settlement Administrator received a data file which contained 55,432 records for affected phone numbers for Persons identified as potential members of the Settlement Class. *Id*. at ¶ 4.  The Settlement Administrator used PacificEast to perform a reverse look-up databases to search the members' of the Settlement Class telephone numbers for available associated physical addresses. *Id*. Through this reverse look-up search, the Settlement Administrator determined the mailing addresses associated with 37,385 members of the Settlement Class (representing 67.4% of the Settlement Class) and mailed postcards to each of these Settlement Class members. *Id*. at ¶¶ 4-5.

For any Mail Notices returned as undeliverable, the Settlement Administrator utilized the LexisNexis database and re-mailed to any updated addresses for such returned Mail Notices, the Settlement Administrator posted the returned Mail Notice to the more current address.  *Id*. at 6. Mail Notice was delivered to over 70% of the Settlement Class. *Id*. at ¶ 7.

The Notice Administrator also established the Settlement Website, http://www.ARKHTCPAClassActionSettlement.com, which went live on January 2, 2018. *Id*. at ¶ 17. The Mailed Notice, along with key pleadings, have been available on the Settlement Website to enable Settlement Class members to obtain detailed information about the Litigation and the Settlement.  *Id*. ¶ 17.  As of April 6, 2018, the Settlement Website had 15,127 visitors and 10,480 sessions *Id*.  In addition, a toll-free number, 1-844-420-6492, was established and has been operational since January 2, 2018.  *Id*. at ¶¶ 14-15.  By calling, Settlement Class

members are connected to a recorded message that provides a brief description of the Litigation as well as answers to frequently asked questions and an option to request mailing of Mailed Notice. *Id.* As of April 5, 2018, the toll-free number had handled 426 calls for a total of 1,179 total minutes of use. *Id.* at ¶ 16. Finally, on February 2, 2018, a banner ad was published through Google and appeared on various websites nationally. *Id.* at ¶ 19. An individual clicking on the banner ad was re-directed to the Settlement Website. *Id.* The publication notice ceased running on March 3, 2018. *Id.*

     **C.**    **The Class Notice Was Reasonably Calculated to Inform the Settlement Class of Their Rights.**

The Court-approved Class Notice satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05. The Class Notice, among other things, defined the Settlement Class, identified the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of proceeds from the Settlement Fund, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Fairness Hearing. It also notified members of the Settlement Class that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents. Further, the Class Notice described Class Counsel's attorneys' fees and reasonable expenses approved by the Court not to exceed Twenty Percent (20%), which is forty thousand dollars ($40,000.00), and an Incentive Award for Plaintiff Rattner and Plaintiff Horsley, to be approved by the Court, and not to exceed $4,500.00 for each. Hence, Settlement

Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15); *see* Walitsky Decl. ¶¶ 6 - 13.

As of April 6, 2018, the Settlement Administrator had received no requests for exclusion and no objections to the Settlement had been filed.  Garcia Decl. ¶¶ 11-12.  The opt-out and objection period ended on April 3, 2018.  [D.E. 48-1, II.X].

Finally, as part of the Settlement, the Settlement Administrator administrated the CAFA Notice and this Court has already found that parties have provided the CAFA notice under 28 U.S.C. § 1715(b) in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. [D.E. 62].

**D.     The Settlement Should Be Approved as Fair, Adequate and Reasonable.**

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).

At this juncture, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *See Gevaerts v. TD Bank, N.A.*, Case No. 11:14-cv-20744-RLR, at *16 (S.D. Fla. Nov. 5, 2015). Rather, the objective at the final approve stage is to ensure that the class action settlement terms are fair, reasonable, and adequate. *See Circeo-*

13

*Loudon v. Green Tree Servicing*, Case No. 14-cv-21384-MORENO, 2016 U.S. Dist. LEXIS 193091 (S.D. Fla. Aug. 30, 2016).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

> (1)     the existence of fraud or collusion behind the settlement;
>
> (2)     the complexity, expense, and likely duration of the litigation;
>
> (3)     the stage of the proceedings and the amount of discovery completed;
>
> (4)     the probability of the plaintiffs' success on the merits;
>
> (5)     the range of possible recovery; and
>
> (6)     the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate, and reasonable.

> **1.     *The Settlement Was the Result of Arm's-Length Negotiation Between the Parties with the Assistance of an Experienced Mediator.***

The context in which the Settlement was reached confirms that it was the result of arm's-length and informed negotiations as opposed to collusion among the parties. The Settlement was reached only after mediation facilitated by a highly experienced and well-respected neutral, Joseph Matthews. *See Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion."); *see also Tornes v. Bank of Am., NA (In re Checking Account Overdraft Litig.)*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel

support a preliminary finding of fairness"). Moreover, the Parties agreed on the terms of the Settlement through experienced counsel, who had at their disposal both prior to the mediation sessions and during subsequent negotiations ample information to evaluate the terms of any proposed agreement so as to reach a fair and reasonable compromise. As such, it is clear that the Settlement was the result of arm's-length and informed negotiation between the Parties, and given that, this Court should not hesitate to approve it.

### 2.    *Complexity, Expense, and Duration of the Litigation.*

As noted, "settlements contribute greatly to the efficient utilization of our scarce judicial resources." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla 2007). In evaluating this *Bennett* factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla 2005). Here, this factor weighs in favor of approving the Settlement Agreement.

In the absence of the Settlement, it is certain that the expense and duration of protracted litigation would be substantial. If the Court were to grant class certification or a dispositive motion in either party's favor, given the history of this litigation, the losing side would likely seek relief from the Eleventh Circuit. In either case, continued litigation of this matter would delay its resolution and inflict unnecessary additional expense on both sides. Where unnecessary additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp. 2d at 1323

(quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.La.1993)); *see also Perez*, 501 F. Supp. 2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear."). Thus, the complexity, expense, and duration of litigation thus weigh in favor of approving the Parties' settlement.

"The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp. 2d at 1319; s*ee also Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323-24 (S.D. Fla. 2007). Where success at trial is not certain for plaintiffs, this factor weighs in favor of approving the settlement. *See Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063-MARTINE, 2009 WL 9054828, at *4 (S.D. Fla. Jan. 20, 2009); *Perez*, 501 F. Supp. 2d at 1380.

Here, Plaintiffs recognize that the expense, duration, and complexity of protracted litigation would be substantial and require further briefing on numerous substantive issues, evidentiary hearings, and further discovery. Against the inherent uncertainty raised by these issues is the concrete nature of the relief afforded under the Settlement, where members of the Settlement Class who submit a valid and timely claim form will recover a direct cash payment. Because ultimate success at trial is far from certain, and the value of the Settlement is unquestionably strong in comparison, this *Bennett* factor weighs in favor of approving the Settlement.

### 3.      *Stage of Proceedings at which Settlement Achieved.*

This *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. Courts look at this factor "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement

against further litigation." *Perez*, 501 F. Supp. 2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, 00-cv-14017, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1332 (S.D. Fla. 2001) ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof.  This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.").

Here, the Settlement Agreement was not reached until the Parties had engaged in motion practice and written discovery.  Plaintiffs ultimately determined that they were provided with sufficient information about the text messages at issue, the size of the Settlement Class, and the range of the Class's potential damages—all *before* completing the mediation process and agreeing to the Settlement after the 30(b)(6) deposition of Defendant.

Hence, there should be no question that, by the time the Settlement was reached, Plaintiffs had enough information to sufficiently evaluate the strength of the claims of the Settlement Class and weigh the benefits of Settlement against continued litigation.  The stage of proceedings factor thus weighs in favor of approval as well.

### 4. *Significant Risk in Probability of Success.*

The fourth factor examines whether there was a possibility that Plaintiffs might recover nothing if litigation had proceeded.  The Agreement provides relief to the Settlement Class where their recovery, if any, would otherwise be uncertain, especially given Defendant's willingness to continue its vigorous defense of the case and dire financial situation.  Defendant continues to deny all material allegations and claims asserted in the Litigation, denies all allegations of wrongdoing and liability, and contends that the Litigation is not amenable to class certification

and that Plaintiffs and the class they seek to represent are not entitled to any form of damages or relief.  In addition, Defendant was intent on opposing class certification and maintains that it has meritorious defenses to all claims alleged in the Litigation.  Given that there was no guarantee of success that Plaintiffs would prevail, that Defendant would almost certainly appeal any judgment, and the uncertainty surrounding the law and facts in this action, the facts strongly support the possibility that Plaintiffs might recover nothing. *Carter v. Forjas Taurus S.A.*, 2016 U.S. Dist. LEXIS 96054, *33-34 (S.D. Fla. July 22, 2016) (approving class settlement and stating "Relative to the challenges and uncertainty that lay ahead for Plaintiff in litigating this case, the Settlement provides the Class with substantial and immediate recovery").

### 5. *The Range of Possible Recovery.*

As in most litigation, "[t]he range of potential recovery spans from a finding of non-liability through varying levels of injunctive relief, in addition to any monetary benefits to class members." *Figueroa*, 517 F. Supp. 2d at 1326 (citing *Lipuma*, 406 F. Supp. 2d at 1322) (internal quotation omitted).  However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id.*.

The TCPA limits damages to $500 per violation. If the court finds that the defendant willfully or knowingly violated the TCPA, the court may, in its discretion, increase the amount of the award to an amount equal to not more than $1500. 47 U.S.C. § 227(b)(3). The risk that Plaintiffs and the Settlement Class would receive a smaller judgment than the settlement was (appropriately) a significant factor in the decision to settle.  The Settlement is consistent with other actions of this type and, considering the circumstances, is fair, adequate and reasonable. Thus, the fifth *Bennett* factors weigh in favor of approval.

6.      *Substance and Amount of Opposition to Settlement.*

The next *Bennett* factor to consider is the substance and amount of opposition to the settlement.  Here, the Court-approved notice plan prompted zero requests for exclusion and no objections.  The fact there are no objections demonstrates that class members find the agreement reasonable and fair, and strongly favors approval of the settlement.  *See Lipuma*, 406 F. Supp. 2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-0986, 2006 WL 1132371, at *13 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.").  Accordingly, the clear lack of opposition weighs heavily in favor of final approval.

## V.      APPLICATION FOR SERVICE AWARD.

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, an Incentive Award for Plaintiff Rattner in the amount of $4,500.00 and an Incentive Award for Plaintiff Horsley in the amount of $4,500.00.  [D.E. 48-1, VI(B)].  Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).  "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action."  *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).  Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives.  *See, e.g.*, *Stallworth v. Monsanto Co.*, No. PCA 73-45. 198) U.S. Dist. LEXIS 12858, at *20-21 (N.D. Fla. June 26, 1980) (approving service awards ranging from $10,000 to $20,000 to four named plaintiffs, "each of whom devoted substantial time to the

prosecution of th[e] lawsuit"); *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chicago Bd. Options Exchange, Inc*., 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g*., *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to the Litigation, demonstrate the reasonableness of the requested Service Award to Plaintiff. [D.E. 63-1, Shamis Decl. ¶ 14]. Plaintiff Rattner provided substantial assistance that enabled Class Counsel to successfully prosecute the Litigation including reviewing all material filings, including approving the Agreement, and locating and forwarding responsive documents and information.

The Incentive Award will compensate Plaintiffs Rattner and Horsely for their time and effort in the action, and for the risk they undertook in prosecuting the Litigation against Defendant. Shamis Decl. ¶ 14. The Incentive Award requested here is reasonable.

## VI.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES [D.E. 61].

Pursuant to the Agreement and the Class Notice, and consistent with recognized class action practice and procedure, Class Counsel respectfully requested an award of attorneys' fees plus expenses not to exceed 20% of the Settlement Fund ($40,000.00), to be paid from the Settlement Fund. [D.E. 61].

VII.   **CONCLUSION.**

Obtaining the Settlement Fund represents a very good result given the obstacles confronted in this Litigation.  The Settlement more than satisfies the adequacy, fairness, and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3).  Further, Class Counsel's request for an Incentive Award for the Plaintiffs and the application for attorneys' fees and expenses is reasonable under all the circumstances.

Accordingly, Plaintiffs and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed Final Order and Judgment attached as **Exhibit B;** (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Alexander Rattner and Kenneth Horsely as class representatives for the Settlement Class; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph II.I of the Agreement; (5) approve the requested Incentive Awards in the amount of $4,500.00 for Plaintiff Rattner and $4,500.00 for Plaintiff Horsely; (6) award Class Counsel attorneys' fees, costs and expenses in the amount of $40,000.00, to be paid out of the Settlement Fund; and (7) enter a Final Order and Judgment dismissing the Litigation with prejudice.

Dated:  April 6, 2018

Respectfully submitted,

| HIRALDO P.A. | SHAMIS & GENTILE, P.A. |
|---|---|
| | Andrew J. Shamis |
| | Florida Bar No. 101754 |
| /s/ Manuel S. Hiraldo | *efilings@shamisgentile.com* |
| Manuel S. Hiraldo | 14 NE 1st Avenue, Suite 400 |
| Florida Bar No. 030380 | Miami, Florida  33132 |
| 401 E. Las Olas Boulevard | (t) (305) 479-2299 |
| Suite 1400 | (f) (786) 623-0915 |
| Ft. Lauderdale, Florida 33301 | |
| Email: mhiraldo@hiraldolaw.com | *Counsel for Plaintiff* |
| Telephone: 954.400.4713 | |
| | |
| *Counsel for Plaintiff* | |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.